IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

HONEYWELL INTERNATIONAL, INC.,

                     Plaintiff,

v.

INDUSTRIAL AND ALLIED WORKERS
LOCAL UNION NO. 101,

                     Defendant.

Civil Action Number 3:08cv773

## **MEMORANDUM OPINION**

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons stated below, the Court denies the plaintiff's motion and grants in part and denies in part the defendant's motion.

**I.**

Honeywell International, Inc. ("plaintiff" or "Honeywell") and Industrial & Allied Workers Local Union No. 101 ("defendant" or "Union") have a thirty-year collective bargaining agreement history[1] in connection with Honeywell's Chesterfield plant, which produces plastic resin pellets. The Collective Bargaining Agreement ("CBA") at issue here was effective from May 15, 2005 through May 14, 2008. During this period, approximately fifteen to twenty Union truck drivers worked at the Chesterfield plant.

In 2007, after a cessation of a contractual relationship with a customer, Honeywell closed its "Warehouse 99," an offsite storage location in which "C-Train" materials were stored. Thereafter, Honeywell cancelled the lease on its third tractor, which had, for more than thirty

---

[1] Corporate ownership of the Chesterfield plant has varied over the years, but, as stipulated to by the parties and as noted by the arbitrator, such changes are irrelevant to the instant matter.

years, been used by Union drivers to transport materials to offsite storage locations. In addition to transporting pellets to storage, Union drivers had used this tractor on an as-needed basis to transport lactam, a substance used in making the pellets, and lactam-related materials or, much less frequently, to engage in what Honeywell calls "tolling work," which involves the offsite transportation of pellets to local "tolling" companies, which blend, modify, and/or package the pellets according to customer specifications.

In May 2007, the Union filed two grievances, alleging violations of Article 4, Section 16(5) and Article 29 of the CBA insofar as Honeywell continued to subcontract offsite delivery work in the form of tolling deliveries without assigning such work to Union drivers. Honeywell denied these grievances, leading the parties to arbitration. On June 18, 2008, the parties conducted an arbitration hearing before Arbitrator Barton W. Bloom ("Arbitrator" or "Bloom"). Pursuant to the parties' past practices, the hearing was transcribed by a court reporter; this transcript was to serve as the official record of the hearing. In lieu of closing arguments, the parties agreed to submit post-hearing briefs, which were due thirty days after receipt of the transcript. Upon receiving the transcript, the Union lawyer sent an email to the Honeywell lawyer stating,

> If your Firm has a "do not use" list for court reporters, I think that the reporter who did our hearing in June should definitely be on it. This transcript is incoherent in parts. The hearing was not that chaotic. There are parts that make us both sound like we just learned English.

Honeywell's lawyer responded by email three minutes later, "That's unfortunate. Thanks for the heads-up." In its post-trial brief, the Union noted that the transcript "contained numerous errors in transcription," an assessment with which the Arbitrator concurred. Therefore, to supplement the transcript, Bloom referred to his notes from the hearing.

At issue in the arbitration were four portions of the CBA: Article 1, Section 4, management function; Article 4, Section 16, truck driving assignments; Article 7, grievance procedure; and Article 29, subcontracting. Relevant portions of these provisions follow.

> Article 1, Section 4:
> Management Function – It is recognized that all management functions shall be retained by [Honeywell]. These functions shall include but are not limited to full and exclusive control of: the management and operation of the plant, the direction of the working forces, the scheduling and determination of the means and manner of production, the introduction of new or improved methods or facilities and the right to hire, train, suspend, discipline, discharge, promote, transfer and layoff employees and schedule and assign jobs. Such functions shall not be exercised contrary to the provisions of this Agreement. The intent of this Section is not to prevent the union from exercising its rights under Article 7.
>
> Article 4, Section 16 - Truck Driving Assignments
> ….
> 5. It is agreed between [Honeywell] and [the] Union that all truck driving work within the Hopewell-Petersburg-Richmond area now being performed by the Materials Movement Section and all truck driving work subsequently assigned to Materials Movement personnel shall be performed by the Materials Movement Section. [Honeywell] may subcontract such work only when it does not have available equipment and/or drivers when such work is of a rush nature and requires immediate transportation.
>
> Article 7, Section 2 – Arbitration
> ….
> (b) The arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this Agreement. The arbitrator shall determine questions of arbitrability.
>
> The arbitrator shall have no power to add to, subtract from, or otherwise modify any of the terms of this Agreement or any other agreement supplemental hereto and shall have no power to establish or fix wage rates.
>
> Article 29, Section 1
> For the purpose of preserving job opportunities for the employees covered by this Agreement, [Honeywell] agrees that work currently performed by, or hereafter assigned to the bargaining unit shall not be subcontracted if it would result in a reduction of the work force, by rollback or layoff in the job which would normally perform the work being subcontracted.

3

On September 26, 2008, Arbitrator Bloom issued a thirty-five-page opinion in which he found that Honeywell was violating Article 4, Section 16(5) of the CBA "by failing to assign tolling delivery work to the third tractor operated by bargaining unit truck drivers before subcontracting with commercial carriers for such work." Finding that a constructive layoff, defined as a reduction in hours, occurred, the Arbitrator also found that Honeywell was violating Article 29 "by subcontracting with commercial carriers for tolling delivery work before assigning such work to the third tractor operated by bargaining unit truck drivers." He therefore ordered Honeywell to (1) acquire a tractor equivalent of the third tractor, to be operated by Union drivers performing bargaining unit work, including tolling work, before such work is subcontracted to commercial carriers, (2) pay, without interest or overtime, relevant back pay, and (3) cease and desist from (i) failing to assign to Union drivers and (ii) subcontracting to external contractors bargaining unit work before assigning it to Union drivers. On November 24, 2008, Honeywell filed its complaint under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, asking that the Arbitrator's award be vacated as failing to derive its essence from the CBA and/or reflecting the Arbitrator's own notions of right and wrong. On March 20, 2009, Honeywell filed its motion for summary judgment and the Union filed its cross motion for summary judgment. On May 13, 2009, a hearing was held on the motions for summary judgment.

## II.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted when there are no material facts in dispute and one side is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must view the facts and any inferences drawn from these facts in the

light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995). A fact is material when proof of its existence or nonexistence would affect the outcome of the case and is in dispute "when its existence or non-existence could lead a jury to different outcomes." *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)(citing *Anderson*, 477 U.S. at 248). Under these parameters, the Court will evaluate the cross motions for summary judgment, recognizing that, as the parties agree, no genuine issue as to any material facts exists.

As the Fourth Circuit has recently noted, "[j]udicial review of an arbitration award in the collective bargaining context is 'extremely limited,' and 'among the narrowest known to the law.'" *Merck & Co., Inc. v. International Chem. Workers Union Council of the United Food and Commercial Workers, Local 94C*, No. 08-1917, 2009 WL 1916706, at *3 (July 6, 2009) (quoting *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008)). Notwithstanding allegations of factual errors or misinterpretations of the parties' agreements, arbitrators' decisions are not subject to review on their merits. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Rather, courts are entitled to "determine only whether the arbitrator did his job – not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). Thus, if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 62 (2000) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether

there is particular language in the written instrument which will support the claim." *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568 (1960) (footnote omitted).

Under this exceedingly deferential standard, courts must enforce an arbitration award if it "draws its essence" from the CBA, *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960), which occurs provided that "[t]he arbitrator [does] not ignore the plain language of the contract," *Misco*, 484 U.S. at 38; *Norfolk & W. Ry. Co. v. Transp. Commc'ns Int'l Union*, 17 F.3d 696, 700 (4th Cir. 1994). "An arbitrator does not have carte blanche, however, to 'dispense his own brand of industrial justice,'" being instead "confined to interpretation and application of the parties' agreement." *United States Postal Serv. v. American Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000) (quoting *Enterprise Wheel*, 363 U.S. at 597). Moreover, as long as an arbitrator's factual findings and interpretation of the CBA are conducted within the parameters of the controlling agreement and are not "wholly baseless and without reason," *Norfolk & W. Ry. Co.*, 17 F.3d at 700, "the courts have no business overruling him because their interpretation of the contract is different from his," *United States Postal Serv.*, 204 F.3d at 527.

In this case, the Arbitrator interpreted the CBA as providing that once Honeywell "assigns a task to the bargaining unit, that task remains bargaining unit work so long as [Honeywell], in its discretion, continues the operation for which such task is performed." Based on the materials before it and as presented to the Arbitrator, the Court cannot say this interpretation is "wholly baseless and without reason." The Court likewise reaches the same conclusion about the Arbitrator's findings concerning tolling work and the occurrence of a constructive layoff. Further, although Honeywell argues that the award enshrines the Arbitrator's own brand of industrial justice, pointing to his supplementation of the transcript with

his notes, the Court cannot concur with this assessment. Having reviewed the transcript, the Court can appreciate the need for reference to contemporaneous notes for clarification purposes, as the lawyers surely did.[2] Moreover, the Court could not identify any portion of the Arbitrator's opinion that was not based on testimony recorded in the transcript. In short, although it quite possibly would have, in the first instance, interpreted the CBA more in accordance with Honeywell's position, the Court must sustain the arbitration award.

The Court finds, however, that an award of attorney's fees to the Union is not warranted. Only when a litigant seeking to vacate an arbitration award under Section 301 of the LMRA "literally [has] no reasonably arguable legal support" is an award of attorney's fees appropriate. *Media Gen. Operations v. Richmond Newspaper Prof'l Ass'n*, 36 Fed. Appx. 126, 134 (4th Cir. 2002). Here, Honeywell had a plethora of legitimate grounds for challenging the arbitration award. Consequently, the Court will not award attorney's fees to the Union.

### III.

Having reviewed the submitted evidence, including the Arbitrator's opinion and arbitration hearing transcript, the Court cannot say that the Arbitrator's opinion "failed to derive its essence from the CBA" or that it enshrines the Arbitrator's own notions of right and wrong. Accordingly, the Court denies the plaintiff's motion for summary judgment and grants in part the defendant's motion for summary judgment. Specifically, the Court enforces the arbitration award, but denies the Union's request for attorney's fees.

An appropriate Final Order shall issue.

<u>August 11, 2009</u>          <u>            /s/            </u>
DATE                                    RICHARD L. WILLIAMS
                                        SENIOR UNITED STATES DISTRICT JUDGE

---

[2] It is clear that the court reporter had difficulty hearing portions of the arbitration hearing. Thus, to forestall a repetition of the instant debate, it would behoove the parties to ensure that future court reporters have a better vantage point of the proceedings.